# Illinois Official Reports

## Appellate Court

---

*In re Marriage of Krol*, 2015 IL App (1st) 140976

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF DOROTA KROL, Petitioner-Appellant, and JOSEF KUBALA, Respondent-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-14-0976 |
| Filed | March 2, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-D-3454; the Hon. Veronica Mathein, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Katarzyna M. Caputa, of Des Plaines, and Rachael Toft, of Law Offices of Rachael Toft, of Chicago, for appellant.<br><br>Theresa C. Ceko, of Loyola University Community Law Center, of Chicago, for appellee. |
| Panel | JUSTICE CONNORS delivered the judgment of the court, with opinion.<br>Presiding Justice Delort and Justice Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1     Dorota Krol (Dorota) and Josef Kubala (Josef), both Polish citizens, were married and living in Poland. Prior to the marriage, Dorota had obtained lawful permanent residency in the United States. She and Josef discussed moving to and living in the United States as a family. In October 2005, Dorota traveled to the United States to maintain her residency status and to submit a visa application for her husband.

¶ 2     On June 1, 2007, the couple's child was born in Poland. Thereafter, Dorota took the child to the United States with Josef's consent on four occasions from September 2007 to November 2007, from April 2008 to June 2008, from January 2009 to May 2009, and from August 2009 to February 2010. Dorota has family in the United States.

¶ 3     On March 20, 2010, Dorota took the child to the United States without Josef's consent. Josef was informed of their location after they arrived.

¶ 4     Josef then filed a petition for dissolution of their marriage in a Polish court. Although the record does not contain a copy of this petition, both parties agree that Josef's petition for dissolution did not request custody of their child. On April 1, 2010, Dorota filed a petition for dissolution of marriage and for custody of the child in the circuit court of Cook County.

¶ 5     On May 5, 2010, Josef filed a "request for return" of the child in Poland pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89) (hereinafter, Convention).

¶ 6     In early June, the circuit court of Cook County received a letter from Josef objecting to any proceeding in the United States because his wife "abducted [the] child from Poland" and "proceedings under the Hague Convention were pending in the U.S. Department of State." The letter requested that Dorota return to Poland with their child so that the couple could "resolve [their] marital disputes in Polish court."

¶ 7     On June 28, 2010, Josef filed a petition pursuant to the Convention (Hague petition) in the circuit court of Cook County requesting that the court decide the "habitual residence" of the child. Josef did not file a counterpetition or answer to Dorota's petition for dissolution and custody in Cook County. Dorota filed a brief in response to Josef's Hague petition.

¶ 8     On September 2, 2010 the trial court held a hearing on Josef's Hague petition, although the parties disagree about whether this was in fact a "hearing" within the meaning of the Illinois Code of Civil Procedure (Code) allowing a plaintiff to voluntarily dismiss an action. 735 ILCS 5/2-1009(a), (c) (West 2008). Neither party provided testimony nor is there a transcript of that court date in the record. The trial court subsequently entered an order that states: "This cause coming before the Court for hearing on Joseph [*sic*] Kubala's petition for return of the child, counsel for Joseph [*sic*] Kubala present in court, Dorota Krol present with counsel, and having previously responded to Mr. Kubala's petition, the Court having made the following findings–findings: A) that Poland is the habitual residence of the minor child *** B) but based on the preponderance of the evidence, the minor child was wrongfully removed from Poland on March 20, 2010. It is thereby ordered, (1) that the minor child *** be returned to Poland [and] (2) that by agreement of the parties, the minor child be returned within 30 days of today's date." The September 2, 2010 order was not appealed. On October 4, 2010, Dorota filed a motion to reconsider and vacate the September 2, 2010 order.

¶ 9     On October 28, 2010, Dorota filed a motion for voluntary dismissal of her petition for dissolution. In her motion, she cited one subsection of the Code allowing for voluntary dismissal of an action which states: "The plaintiff may, at any time before trial or hearing begins, upon notice to each party who has appeared or each such party's attorney, and upon payment of costs, dismiss his or her action or any part thereof as to any defendant, without prejudice, by order filed in the cause." 735 ILCS 5/2-1009(a) (West 2008).

¶ 10    On December 17, 2010, the court denied Dorota's motion to reconsider and vacate the September 2, 2010 order finding Poland to be the child's habitual residence. In the same order, the court ordered that the child be returned to Poland within 30 days of December 17, 2010. The court did not immediately rule on Dorota's motion for voluntary dismissal.

¶ 11    Between December 2010 and October 2013, Dorota or her counsel failed to appear in court on at least three occasions, May 24, 2011, June 29, 2011, and November 28, 2011. During this same period of time, Josef filed two motions for rule to show cause and requested three body attachments. Ultimately, Dorota was found in contempt of the court order of September 2, 2010 and was committed to Cook County jail in September 2013. She was released in early October 2013 after posting part of her bond and producing proof of travel preparations to Poland for her and the child.

¶ 12    In early November 2013, both parties submitted memos addressing "whether the Hague petition is a 'stand alone' petition or whether or not it falls with the dismissal of the petition for dissolution of marriage." On November 15, 2013, the court made an oral ruling addressing this question. The court's oral ruling noted that the September 2, 2010 hearing and ruling on Josef's Hague petition did not dispose of all the issues in the underlying divorce action but was a final and appealable order. The oral ruling also indicated that the court found *Crall-Shaffer v. Shaffer*, 663 N.E.2d 1346 (Ohio Ct. App. 1995) (*per curiam*), to be "on all fours with the matter pending before the Court." On December 12, 2013 the court confirmed its oral ruling with a written order containing the following findings:

> "1. Section 2-1009 [(735 ILCS 5/2-1009 (West 2008))] does give Dorota an absolute right to dismiss her Petition and DOROTA's Motion for Voluntary Dismissal was properly brought before this Honorable Court.
>
> 2. This Honorable Court has subject matter jurisdiction over a motion brought pursuant to the Hague Convention.
>
> 3. The Petition for Return of Child to Jozef [*sic*] Kubala, filed on June 28, 2010, was brought pursuant to the Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (hereinafter referred to as 'Convention') and 42 U.S.C. 11603 (b), the International Child Abduction Remedies Act (ICARA).
>
> 4. This Court has original and concurrent jurisdiction over the Hague Petition, the merits of the Hague Petition remain correctly before the Court."

After these findings, the written ruling ordered, in relevant part, that the "Petition for Return of Child to Jozef [*sic*] Kubala filed pursuant to the Hague Convention on June 28, 2010 survives the dismissal of the underlying complaint, here that being the Petition for Dissolution of Marriage filed by DOROTA on April 1, 2010." The court also appointed a guardian *ad litem* to represent the best interests of the child. 750 ILCS 5/506(a)(2) (West 2012).

¶ 13    On December 17, 2013, the court ordered that the child be returned to Poland by December 31, 2013 and remain in Dorota's care pending a custody determination in Poland. That same order also stated that "Articles 12, 13 [and] 20 defenses of the [Convention] are not material to this issue as the Court entered the [September 2, 2010] order directing return of the child to Poland and a subsequent Motion to Reconsider was denied."

¶ 14    On December 24, 2013, Dorota filed a "Motion to Stay Return of Minor Child to Poland until Such Time when a Safe Harbor and Undertakings Order is obtained from the Courts in Poland and for other Relief." Josef filed a response and the court heard arguments on the motion. On March 7, 2014, the court denied Dorota's motion to stay the return of the child and further stated "[t]hat the [December 17, 2013] order entered in this matter remains in full force and effect. That Dorota Krol will return the [child] to Poland within 14 days."

¶ 15    The child returned to Poland on August 27, 2014.

¶ 16    Dorota raises three issues on appeal. First, whether the trial court improperly allowed the Hague petition to "stand alone" following the dismissal of Dorota's petition for dissolution of marriage. Second, whether the trial court's orders entered after the voluntary dismissal of Dorota's petition for dissolution were void *ab initio*. Third, whether a substantial change of circumstances since the September 2, 2010 order finding Poland to be the child's habitual residence warrants that it is in the best interest of the child to remain in the United States pending a custody determination. We answer all three issues in the negative.

¶ 17    The Convention at issue, adopted in 1980, seeks to secure the prompt return of children wrongfully removed to or retained in any signatory state. Convention, *supra*, ch. I, art. 1. A central purpose of the Convention is to "discourage parents from crossing international borders in search of a more sympathetic forum" in which to litigate custody issues. *In re Lozano*, 809 F. Supp. 2d 197, 217 (S.D.N.Y. 2011), *aff'd sub nom. Lozano v. Alvarez*, 697 F.3d 41 (2d Cir. 2012), *aff'd sub nom. Lozano v. Montoya Alvarez*, 572 U.S. ___, 134 S. Ct. 1224 (2014). Poland is a signatory to the Convention. The United States is also a signatory to the Convention and has implemented its provisions through the International Child Abduction Remedies Act (ICARA) (42 U.S.C. § 11601 *et seq.* (2006)).

¶ 18    The ICARA statute provides that "[a]ny person seeking to initiate judicial proceedings under the Convention for the return of a child *** may do so by commencing a civil action by filing a Petition for the relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed." 42 U.S.C. § 11603(b) (2006). The statute further states that the "courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Convention." *Id.* § 11603(a). The statute also allocates burdens of proof under the Convention. For a successful claim seeking return of a child who has been wrongfully removed or retained within the meaning of the Convention, a petitioner must establish that (1) the habitual residence of the child immediately before the date of the alleged wrongful retention was in a foreign country; (2) the retention is in breach of custody rights under the foreign country's law; and (3) the petitioner was exercising custody rights at the time of the alleged wrongful retention. *Id.* § 11603(e)(1)(A), (B); *In re Lozano*, 809 F. Supp. 2d 197, 218 (S.D.N.Y. 2011).

¶ 19    If the petitioner satisfies this burden, the child must be returned to his or her state of habitual residence "promptly" unless the respondent can establish that one of the narrow exceptions set forth in the Convention applies. Convention, *supra*, ch. III, art. 12; 42 U.S.C.

§ 11601(a)(4) (2006). Those exceptions are (1) the proceeding was commenced more than one year after the removal of the child and the child has become settled in his or her new environment; (2) the person seeking return of the child was not actually exercising custody rights at the time of the removal or retention, or had consented to or subsequently acquiesced in the removal or retention; (3) there is a grave risk that the return of the child would expose him or her to physical or psychological harm; or (4) the return of the child would not be permitted under the fundamental principles of the requested state relating to the protection of human rights and fundamental freedoms. See Convention, *supra*, ch. III, arts. 12, 13, 13(b), 20. See also *In re Lozano*, 809 F. Supp. 2d 197, 218 (S.D.N.Y. 2011). The Convention and its implementing legislation instruct courts *not* to make a determination on the custody of the child until the child's habitual residence has been determined. Convention, *supra*, ch. III, art. 16 (a judicial authority "shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned [to his or her country of habitual residence] under this Convention"), art. 19 ("A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue."); 42 U.S.C. § 11601(b)(4) (2006) ("The Convention and this chapter empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims.").

¶ 20 We turn first to whether the trial court improperly allowed the Hague petition to "stand alone" following the dismissal of Dorota's petition for dissolution of marriage. Because we find the Hague petition analogous to the survival of an order of protection after dismissal of a petition for dissolution and acknowledge the unique purpose and jurisdictional provisions of the Convention, we affirm the trial court's conclusion that the Hague petition survived the dismissal of Dorota's petition for dissolution.

¶ 21 The survival of an order of protection upon dismissal of a conjoined case such as a petition for dissolution of marriage is a relevant analogy to the case at hand. The Illinois Domestic Violence Act of 1986 (750 ILCS 60/202 (West 2008)) provides that an order of protection may be commenced with another civil proceeding, such as the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.* (West 2008)), by filing a petition for an order of protection under the same case number as the civil proceeding involving the parties. 750 ILCS 60/202(a)(2) (West 2008). Even if the order of protection is consolidated with another civil proceeding, the order of protection is an "independent action." 750 ILCS 60/202(c) (West 2008). Notably, the dismissal of the civil proceeding with which the order of protection has been consolidated "shall not require dismissal of the action for the order of protection." *Id.* "[I]nstead, [the order of protection] may be treated as an independent action and, if necessary and appropriate, transferred to a different court or division." *Id.* Finally, the same section states that "[d]ismissal of any conjoined case shall not affect the validity of any previously issued order of protection." *Id.*

¶ 22 We find that Josef's Hague petition should be treated as an independent action that survives the dismissal of the petition for dissolution of marriage just as an order of protection also survives the dismissal of a petition for dissolution of marriage. The Hague petition could have initiated a cause of action, just as an order of protection can initiate a cause of action. Compare 42 U.S.C. § 11603(b) (2006), with 750 ILCS 60/202(a)(1), (2), (3) (West 2008) (Actions for orders of protection are commenced: "(1) *Independently: By filing a petition for an order of protection in any civil court*, unless specific courts are designated by local rule or

- 5 -

order. (2) In conjunction with another civil proceeding ***. (3) In conjunction with a delinquency petition or a criminal prosecution ***." (Emphasis added.)). The fact that Dorota filed her petition for dissolution of marriage in the circuit court of Cook County should not determine the fate of a Hague petition that could have stood as its own independent cause of action. It bears noting that the procedural steps of the Hague Convention take time (Convention, *supra*, ch. III, arts. 8, 9, 10), and, as a result, a Hague petition may not be filed as expeditiously as another matter without similar procedural hurdles.

¶ 23    In addition to standing as an independent action, the ICARA clearly provides the jurisdictional grounds for a Hague petition independent of the jurisdictional grounds of the original complaint. 42 U.S.C. § 11603(a) (2006) ("The courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Convention."). In *Crall-Shaffer v. Shaffer*, an appellate court in Ohio similarly found that a defendant-father's Hague petition could remain pending for independent adjudication following the plaintiff-wife's voluntary dismissal of her action for legal separation. *Crall-Shaffer*, 663 N.E.2d at 1348. The court stated, "[W]e decline to construe the Hague petition as a counterclaim which could not remain pending for independent adjudication by the court." *Id.* The court then held that "the Hamilton County Court of Common Pleas, Domestic Relations Division, as a court of the state of Ohio, had original and concurrent jurisdiction over the Hague petition pursuant to Section 11603(a), Title 42, U.S. Code." *Id.*

¶ 24    Our decision advances the purpose of the Convention and the provisions of its implementing legislation. The Convention's goal of securing the "prompt return of children wrongfully removed to or retained" in any state signatory to the treaty using the "most expeditious procedures available" (Convention, *supra*, ch. 1, arts. 1, 2) is achieved by allowing for the independent adjudication of a Hague petition even after the voluntary dismissal of a petition for dissolution. If, on the contrary, we were to allow Dorota's voluntary dismissal to result in the dismissal of the Hague petition, we would effectively eliminate Josef's remedy under the Convention. He would not be able to file the Hague petition in Poland where he had begun divorce proceedings, as Dorota suggests, because his daughter was located in Cook County. Convention, *supra*, ch. III, arts. 10, 11, 12, 16; 42 U.S.C. § 11603(b) (2006). Even if Josef could refile his Hague petition in the circuit court or in a district court, both options consume judicial resources and result in a delay contrary to the Convention's call for expeditious resolution of wrongful retention or removal of a child. Convention, *supra*, ch. III, art. 11. Dorota's argument that the Hague petition must be dismissed with the dismissal of her petition for dissolution prevents a court from concluding which country is the proper forum for the child custody determination. This leaves both parents without a resolution on the proper forum in which to litigate their custody claims.

¶ 25    In this case, given that Dorota has kept the child for three years after the trial court held that the habitual residence of the child was Poland, it seems reasonable for a court to conclude that she used the voluntary dismissal mechanism to "avoid a potential decision on the 'merits' or to avoid an adverse ruling as opposed to using it to correct a procedural or technical defect." (Internal quotation marks omitted.) *In re Marriage of Saleh*, 202 Ill. App. 3d 131, 135 (1990) (citing *Gibellina v. Handley*, 127 Ill. 2d 122, 137 (1989)). We cannot allow the use of the voluntary dismissal mechanism to avoid an unfavorable determination on a child's habitual residence. Furthermore, allowing the Hague petition to stand alone further discourages

"parents from crossing international borders in search of a more sympathetic forum" in which to litigate custody issues. *In re Lozano*, 809 F. Supp. 2d 197, 217 (S.D.N.Y. 2011).

¶ 26 Having concluded that the trial court properly allowed the Hague petition to stand alone, we also conclude that the court maintained jurisdiction over the matter when, on December 17, 2013, it entered the order requiring that the child be returned to Poland and again on March 7, 2014 when the trial court denied Dorota's motion to stay the return of the child. The March order further stated "[t]hat the [December 17, 2013] order entered in this matter remains in full force and effect" and ordered Dorota to return the child to Poland within 14 days. As stated above, the court had original and concurrent jurisdiction to hear and adjudicate Josef's Hague petition. 42 U.S.C. § 11603(a) (2006). The two orders entered after Dorota voluntarily dismissed her petition for dissolution simply restated and reinforced the rulings of September 2, 2010. Both orders addressed the same abduction claim between the same parties. Dorota's second argument that the December 17, 2013 and the March 7, 2014 orders were *void ab initio* because the trial court lacked jurisdiction fails.

¶ 27 We turn now to the third issue. Dorota asserts that there has been a substantial change in circumstances for the minor child that the court failed to consider after the initial determination of habitual residence in this case. She relies on the following facts to demonstrate the change in circumstances: that the child attended more than two years of school, visited doctors' offices, participated in extracurricular activities and spent time with friends and family in the United States. This argument fails because Dorota's noncompliance with court orders created the delay that brought about any "change in circumstances" that Dorota now hopes to use to her advantage.

¶ 28 Any "change in circumstances" or "acclimatization" that the child experienced occurred during the period of time in which Dorota was not responsive to court orders mandating that the child be returned to Poland. Dorota initially failed to comply with the September 2, 2010 order when she did not return the child to Poland by October 2, 2010. She then failed to comply with the September 2, 2010 and December 17, 2010 orders when she did not return the child to Poland by January 16, 2011. Subsequently, Dorota was absent from court on at least three occasions. Dorota avoided court orders and two body attachments before she was found in contempt of court. During this period and until October 2013, Dorota remained with the child in the United States. In fact, the child was not returned to Poland until August 2014, almost four years after the initial determination of the child's habitual residence. She cannot now benefit from her defiance of court orders to prove the child's change in circumstances.

¶ 29 Moreover, nothing in the Convention or its implementing legislation allows for the defense of a "substantial change in circumstances." The only defenses are those elaborated in the Convention. Convention, *supra*, ch. III, arts. 12, 13, 13(b), 20. We are not persuaded to undertake, as Dorota suggests, as a "matter of first impression" whether defenses outside the Convention are applicable. The Convention and the ICARA establish procedures for the prompt return of children wrongfully removed or retained and Dorota's conduct forestalled the smooth execution of those procedures.

¶ 30 For the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 31 Affirmed.